MARC J. WINTHROP – State Bar No. 63218
mwinthrop@winthropcouchot.com
GARRICK A. HOLLANDER – State Bar No. 166316
ghollander@winthropcouchot.com
PAYAM KHODADADI – State Bar No. 239906
Pkhodadadi@winthropcouchot.com
**WINTHROP COUCHOT**
**PROFESSIONAL CORPORATION**
660 Newport Center Drive, Fourth Floor
Newport Beach, CA 92660
Telephone: (949) 720-4100
Facsimile: (949) 720-4111

[Proposed] General Insolvency Counsel for
Debtor and Debtor-in-Possession

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

## SANTA ANA DIVISION

| | |
|---|---|
| In re<br><br>W/C IMPORTS INC., a California corporation,<br><br>Debtor and Debtor-in-Possession. | Case No. 8:09-19622 ES<br><br>Chapter 11 Proceeding<br><br>**DECLARATION OF PATRICK J. MCCULLAGH IN SUPPORT OF THE FOLLOWING MOTIONS:**<br><br>1. **CASH COLLATERAL**<br>2. **PAYROLL**<br>3. **LIMIT NOTICE**<br><br>DATE:    [To be Set]<br>TIME:    [To Be Set]<br>CTRM:    [To Be Set] |

I, Patrick J. McCullagh, hereby declare as follows:

1. I am the President of W/C Imports Inc., a California corporation, the debtor and debtor-in-possession in the above Chapter 11 proceeding (the "Debtor"), and have been responsible for overseeing the day-to-day financial operations and financial performance of the Debtor. Consequently, I am involved in supervising all aspects of the Debtor's financial affairs.

2. The facts stated herein are within my personal knowledge, and if called upon to testify to such facts I could and would testify competently thereto.

**General Description of the Debtor**

3. Since 1975, the Debtor has been designing, sourcing, importing, marketing, and distributing a variety of home textiles for kitchens, dining rooms, bedrooms and bathrooms, primarily to department stores and specialty retailers, and, to a lesser degree, discount stores and on-line retailers. The Debtor either takes customer designs and arranges the manufacturing of products to customer specifications, or develops exclusive products with in-house design and merchandising teams. The Debtor offers private labels, its own national brands, and recognized brands, including Waterford, Royal Doulton, Calvin Klein, TableTops Gallery, Monique Lhuillier and Casa Cristina.

4. The Debtor's leases its corporate office and warehouse located in Anaheim, California and leases a showroom in New York. Waterford Linens, Inc. ("Waterford") owns 86.5% of the shares of Ashling Corporation and I own the remaining 13.5% of the shares. Ashling Corporation owns 100% of the Debtor. The Debtor employs twenty-two employees.

5. CIT Group asserts against the Debtor's estate a senior secured claim, which, according to the Debtor's books and records, amounts to approximately $2,750,000. I assert against the Debtor's estate a secured claim, which, according to the Debtor's books and records, amounts to approximately $450,000.

6. The Debtor's financial difficulties have been caused, in large part, by the loss of a significant customer, the Debtor's inability to collect on outstanding accounts receivables, related inventory issues, and the economic downturn. These issues, coupled with the bankruptcy filing in 2009 of Waterford, which had guaranteed the Debtor's line of credit, caused a significant strain on

the Debtor's available line of credit, resulting in insufficient working capital to adequately fund its operations.

7. In an effort to address its financial difficulties, prior to filing for Chapter 11, the Debtor: reduced payroll expense by reducing its workforce and salary and wage amounts and eliminating overtime, suspended all non critical expenses, and improved its collections. These actions were not sufficient to resolve the Debtor's financial problems, resulting in the need to file a petition under Chapter 11 of the Bankruptcy Code. Consequently, on September 9, 2009 ("Petition Date"), the Debtor filed a voluntary petition under Chapter 11 of the Bankruptcy Code.

8. Based on the Debtor's inability to obtain sufficient financing to sustain its operations in the long term, the Debtor seeks to preserve its going concern value and position the company for a prompt sale to maximize value for its creditors. In order to accomplish this goal, I recently advanced $130,000 to the Debtor in order to enable the Debtor to fulfill its current orders in efforts to foster its relationships with customers and vendors.

9. In light of the feedback received from its pre-petition efforts to sell its business outside of Chapter 11, the Debtor has determined that selling its business in Chapter 11 will yield the greatest number of interested parties and greatest value for creditors. Accordingly, the Debtor intends to aggressively and expeditiously pursue a sale of its assets. In the event that the Debtor is not able to sell its business within the next approximately ninety days, the Debtors anticipates either dismissing or converting this case.

**Cash Collateral**

10. The Debtor proposes to use funds claimed as cash collateral by me and the CIT Group in connection with the continued operation of the Debtor's business, in accordance with the provisions of the Debtor's cash flow budget attached hereto as Exhibit "1" and incorporated herein by this reference.

11. I have reviewed the Budget, which was prepared under my supervision. The business assumptions underlying the operations projected in the Budget are essentially in accordance with the Debtor's historical experience, as adjusted to take into account recent or projected events (e.g., the cost-cutting measures implemented by the Debtor). While any

projections of future events are subject to change based upon the occurrence of events unanticipated at the time of the preparation of such projections, given the reasonableness of the operating assumptions underlying the Budget and the care with which the Budget was prepared, it is my firm opinion that the Budget reflects the best projections available for the Debtor's operations during the period indicated by the Budget. Accordingly, I believe that the projections reflected by the Budget are reliable and that the financial performance indicated by the Budget is realistic and achievable by the Debtor.

12. As a secured creditor, I consent to the Debtor's use of cash collateral. The Debtor proposes to use any cash collateral of the CIT Group pursuant to the terms and conditions set forth in the cash collateral motion.

13. The Budget includes summaries of the value of the CIT Group's cash collateral, loan balances owing to the CIT Group, and equity cushions for each of the projected weeks. As the Budget indicates, the CIT Group enjoys a substantial equity cushion equal to 78% of the CIT Group loan balance even after conservatively discounting the value of inventory by 35%, or $572,000, and accounts receivable by 25%, or $1,250,000. In fact, the CIT Group never enjoys a cushion less than 45% (which is 225% greater than that which is required by the 9th Circuit), and at that point, the "cash" component of the collateral base will be greater than the loan balance owing to the CIT Group.

14. Based upon the Budget set forth on Exhibit "1," I believe that the Court should authorize the Debtor's continued use of cash collateral in connection with its ongoing business operations. The CIT Group enjoys a substantial equity cushion of 45-79% of its loan balance. Moreover, the Debtor's business strategy, which requires use of cash collateral, as reflected in the attached Budget, preserves the Debtor's going concern value, which will: (i) enable the CIT Group to realize 100% on its loan, and (ii) position the Debtor for a sale of its business as a going concern, thereby maximizing its potential value for creditors.

15. Without the preservation of the Debtor's business as a going concern and consequential use of cash collateral, CIT will recover a very small percentage on its loan, and creditors are assured to receiving nothing in this case.

16. The preservation of the value of the Debtor's estate and the success of this Chapter 11 case depend upon the Debtor's ability to obtain funds necessary to maintain the Debtor's operations for the next ninety days in order to position itself to identify a purchaser for the Debtor's business. To do so, the Debtor must be able to meet, without interruption, its cash needs for post-petition purposes, fulfill its current customer orders, and pay other operational expenses incurred in the ordinary course of its business. Since the Debtor has been unable to secure financing, the use of cash collateral is critical to maximizing the return for the Debtor's creditors. Conversely, if the Debtor is not allowed to use the cash collateral, the Debtor will be forced to either dismiss this proceeding or convert it to a Chapter 7 proceeding (and liquidate its assets), resulting in much lower returns to the Debtor's creditors.

**Payroll**

17. The Debtor seeks court authority to pay its pre-petition wage related obligations and honor its employee related pre-petition benefits. These obligations include prepetition payroll, wages, salaries, federal, state and local payroll taxes, deductions and withholdings, payroll deductions relating to various benefits, reimbursement of business expenses, 401(k) plan employer contributions; and miscellaneous other claims asserted by current employees (including, without limitation, worker's compensation, medical, dental, life insurance, and disability insurance). The Debtors also seeks to honor all pre-petition benefits including vacation pay, sick leave, holiday pay, jury duty pay, and other paid leave in the ordinary course.

18. Attached hereto as Exhibit "2" is a list of the Debtor's employees and the payroll due for each employee for the applicable pre-petition period. The Debtor seeks authority to pay these pre-petition wages and salaries, which is summarized as follows:

| TYPE OF EMPLOYEE | PRE-PETITION PERIOD | PAYMENT DUE DATE | AMOUNT |
| --- | --- | --- | --- |
| Salary | 9/1/09 – 9/9/09 | 9/15/09 | $27,660 |
| Hourly | 8/23/09 – 9/9/09 | 9/15/09 | $ 5,040 |
| Hourly | 9/6/09 – 9/9/09 | 9/30/09 | $ 1,288 |

19. Included in Exhibit "2" is a list of the unpaid 401(k) safe harbor contributions due each of the employees from the Debtor for the 180 day pre-petition period, which total approximately $18,000.

20. The total amount of unpaid pre-petition employee wages and employee benefits due from the Debtor to all of its employees, except for me[1] (to whom no payment will be made until further authorization is obtained), are less than $10,950 for each employee. To the extent any such amount is in excess of $10,950 for an employee, the Debtor will pay a maximum amount of $10,950 to such employee pursuant to an order granting this Motion.

21. **The prepetition compensation amounts includes compensation to insiders in this case, but no payments will be made to the insiders until such time as the Debtor's post-petition compensation is authorized to be paid pursuant to the U.S. Trustee Guidelines.** Furthermore, the payroll checks paid pursuant to this motion will not exceed the $10,950 wage priority limit provided for in Section 507(a) of the Bankruptcy Code.

22. The Debtor's business is dependent upon its labor. If these employees are not paid, they will most likely cease working and seek employment elsewhere. Any such disruption would have a devastating effect upon the Debtor's business and consequential value to the creditors. In contrast, if the Debtor obtains the relief sought herein its business operation will continue in the ordinary course, customer needs will be met, and the overall value of the Debtor's business enterprises will be preserved for creditors.

**Limit Notice**

23. The Debtor has more than 200 creditors in its case. Some of the motions and applications that may be filed in the Debtor's cases will involve matters that ordinarily fall within the parameters of notices required to be given to all creditors in the Debtor's case, but which will not affect directly, or impact the interests of, a majority of creditors. The Debtor contends that providing notice to all such parties would be overly burdensome and costly to their estates.

24. I believe that limiting notice to the U.S. Trustee, the secured and twenty largest unsecured creditors and investors, and to all parties who request special notice in the Debtor's

---

[1] Prepetition wage and employee benefit reimbursements owed to me is approximately $4,026 over the $10,950 limit.

-6-
MAINDOCS-#133291-v1-W_C_Imports_Dec_of_P_McCullagh_re__1st_day_motions.DOC

1 Chapter 11 case, would provide adequate and proper notice to affected creditors and to other
2 interested parties. Additionally, the Debtor will provide notice to any party whose interest is
3 impacted directly by a particular action or proceeding filed by the Debtor.
4     25. Notwithstanding the Debtor's proposed procedures for limiting of notice in the
5 Debtor's case, the Debtor will provide to all creditors notice of the following matters:
6     a. the time fixed for filing objections to, and the hearing to consider approval
7 of, a disclosure statement;
8     b. the time fixed for filing objections to, and the hearing to consider
9 confirmation of, a plan;
10     c. any time fixed for filing objections to, and any hearing to consider, a
11 proposed sale of all or substantially all assets of the estate;
12     d. notices with respect to claims bar dates; and
13     e. any time fixed for filing objections to, and any hearing on, a dismissal of the
14 cases.
15     26. I believe that adoption of this proposed notice procedure, after notice and the
16 opportunity for a hearing, is necessary and appropriate. Such notice procedure will relieve the
17 Debtor of the significant administrative burdens that would be associated with periodic "mass
18 mailings," and would reduce substantially the Debtor's postage and reproduction costs, thereby
19 facilitating significantly the economical and efficient administration of the Debtor's case.
20     27. I believe that an order authorizing the limiting of service of those notices set forth
21 in Rules 2002 and 9007 of the Federal Rules of Bankruptcy Procedure will ultimately benefit the
22 creditors of the Debtor's estate by saving for the estate undue postage and photocopying expenses
23 and by eliminating the administrative burdens, which would be associated with the Debtor having
24 to serve all notices in the Debtor's case on the substantial number of creditors in this case.
25     I declare under penalty of perjury that the foregoing is true and correct.
26     Executed this 10th day of September 2009, at New York, New York.
27
28                                                   *Patrick J. McCullagh* (signature)
                                                  Patrick J. McCullagh

**EXHIBIT "1"**

# W-C Designs
## Projected Cash Flow
### 13 Weeks Ended 12/6/09

| | Assumptions | 9/13 | 9/20 | 9/27 | 10/4 | 10/11 | 10/18 | 10/25 | 11/1 | 11/8 | 11/15 | 11/22 | 11/29 | 12/6 | TOTAL |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Credit Sales | | 400,000 | 100,000 | 100,000 | 100,000 | 50,000 | 50,000 | 50,000 | 50,000 | 50,000 | 50,000 | 50,000 | 50,000 | 50,000 | 1,150,000 |
| COGS | 55% | | | | | | | | | | | | | | |
| A/R Dilution (Post-Petition) | 25% | | | | | | | | | | | | | | |
| A/R Allowance (Pre-Petition) | 25% | | | | | | | | | | | | | | |
| Inventory Allowance | 35% | | | | | | | | | | | | | | |
| P. McCullagh Loan (PMSI) | | 100,000 | | | | | | | | | | | | | 100,000 |
| **Accounts Receivable** | | | | | | | | | | | | | | | |
| Pre-Petition | $ 3,750,284 | 3,525,284 | 3,300,284 | 3,075,284 | 2,700,284 | 2,325,284 | 1,950,284 | 1,500,284 | 1,050,284 | 600,284 | 221,534 | 0 | 0 | 0 | 0 |
| Post-Petition | 0 | | 375,000 | 450,000 | 525,000 | 562,500 | 600,000 | 637,500 | 675,000 | 412,500 | 375,000 | 337,500 | 300,000 | 300,000 | 300,000 |
| | | 3,825,284 | 3,675,284 | 3,525,284 | 3,225,284 | 2,887,784 | 2,550,284 | 2,137,784 | 1,725,284 | 1,012,784 | 596,534 | 337,500 | 300,000 | 300,000 | 300,000 |
| **Inventory** | | | | | | | | | | | | | | | |
| Pre-Petition, Net of Reserve | $ 1,636,000 | 1,063,400 | 200,000 | 50,000 | | | | | | | | | | | 1,063,400 |
| Purchases | | 130,000 | | | | | | | | | | | | | 380,000 |
| Post-Petition | | (250,000) | (55,000) | (55,000) | (55,000) | (27,500) | (27,500) | (27,500) | (27,500) | (27,500) | (27,500) | (27,500) | (27,500) | (27,500) | (662,500) |
| | | 943,400 | 1,088,400 | 1,083,400 | 1,028,400 | 1,000,900 | 973,400 | 945,900 | 918,400 | 890,900 | 863,400 | 835,900 | 808,400 | 780,900 | 780,900 |

| | | 9/13 | 9/20 | 9/27 | 10/4 | 10/11 | 10/18 | 10/25 | 11/1 | 11/8 | 11/15 | 11/22 | 11/29 | 12/6 | TOTAL |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Beginning Cash** | $ | 5,000 | 124,500 | 36,500 | 111,000 | 385,500 | 609,500 | 942,000 | 1,292,000 | 1,697,000 | 2,298,500 | 2,712,250 | 2,930,284 | 2,986,284 | 117,000 |
| **Cash Receipts** | | | | | | | | | | | | | | | |
| Collection of Receivables | | | | | | | | | | | | | | | |
| Pre-Petition Sales | | 225,000 | 225,000 | 225,000 | 375,000 | 375,000 | 375,000 | 450,000 | 450,000 | 450,000 | 378,750 | 221,534 | | | 3,750,284 |
| Post-Petition Sales | | | | | | | | | | 300,000 | 75,000 | 75,000 | 75,000 | 37,500 | 562,500 |
| P. McCullagh Loan (PMSI) | | 130,000 | | | | | | | | | | | | | 130,000 |
| **Total Receipts** | | 355,000 | 225,000 | 225,000 | 375,000 | 375,000 | 375,000 | 450,000 | 450,000 | 750,000 | 453,750 | 296,534 | 75,000 | 37,500 | 4,442,784 |
| **Disbursements** | | | | | | | | | | | | | | | |
| Cost of Sales | | | | | | | | | | | | | | | |
| Purchases | | (130,000) | (200,000) | (50,000) | | | | | | | | | | | (380,000) |
| Royalties | 5% | (5,000) | (5,000) | (5,000) | (20,000) | (5,000) | (5,000) | (5,000) | (2,500) | (2,500) | (2,500) | (2,500) | (2,500) | (2,500) | (50,000) |
| Warehouse Supplies | | | | | (5,000) | (5,000) | (5,000) | (5,000) | (5,000) | (5,000) | (5,000) | (5,000) | (5,000) | (5,000) | (65,000) |
| Operating Expenses | | | | | | | | | | | | | | | |
| Payroll, Taxes & Benefits | | (56,000) | (25,000) | (56,000) | (6,000) | (56,000) | (25,000) | (56,000) | (56,000) | (56,000) | (25,000) | (56,000) | | (56,000) | (467,000) |
| Temporary Labor | 3% | (15,000) | (6,000) | (6,000) | (6,000) | (4,500) | (4,500) | (4,500) | (4,500) | (4,500) | (4,500) | (4,500) | (4,500) | (4,500) | (73,500) |
| Rent | | | | | (60,000) | | | | (30,000) | | | | (30,000) | | (120,000) |
| Insurance | | (15,000) | | | | (15,000) | | | | (15,000) | | | | (15,000) | (60,000) |
| Utilities | | | (4,000) | | | | (4,000) | | | | | (4,000) | | (12,000) |
| Bank Charges | | (2,000) | (2,000) | (2,000) | (2,000) | (2,000) | (2,000) | (2,000) | (2,000) | (2,000) | (2,000) | (2,000) | (2,000) | (26,000) |
| Travel | | (5,000) | (5,000) | (5,000) | (1,000) | (1,000) | (1,000) | (1,000) | (1,000) | (1,000) | (1,000) | (1,000) | (1,000) | (25,000) |
| Other | | (7,500) | | (7,500) | | (7,500) | | (7,500) | | (7,500) | | (7,500) | | (7,500) | (52,500) |
| Chapter 11 Fees | | | | | | | | | | | | | | | |
| Debtor's Professionals | | | (70,000) | | | | | | | | | | | (180,000) | (180,000) |
| OCC Counsel | | | | (15,000) | | | (55,000) | (15,000) | (55,000) | | | | | (30,000) | (30,000) |
| U.S. Trustee Fees | | | | | (6,500) | | | | | | | | | | (6,500) |
| **Total Disbursements** | | (235,500) | (313,000) | (150,500) | (100,500) | (151,000) | (42,500) | (100,000) | (45,000) | (148,500) | (40,000) | (78,500) | (19,000) | (123,500) | (1,547,500) |
| **Ending Cash** | | 124,500 | 36,500 | 111,000 | 385,500 | 609,500 | 942,000 | 1,292,000 | 1,697,000 | 2,298,500 | 2,712,250 | 2,930,284 | 2,986,284 | 2,900,284 | 2,900,284 |

| **Summary of Cash Collateral** | | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Cash | | 124,500 | 36,500 | 111,000 | 385,500 | 609,500 | 942,000 | 1,292,000 | 1,697,000 | 2,298,500 | 2,712,250 | 2,930,284 | 2,986,284 | 2,900,284 | |
| A/R | | 3,825,284 | 3,675,284 | 3,525,284 | 3,225,284 | 2,887,784 | 2,550,284 | 2,137,784 | 1,725,284 | 1,012,784 | 596,534 | 337,500 | 300,000 | 300,000 | |
| Inventory | | 943,400 | 1,088,400 | 1,083,400 | 1,028,400 | 1,000,900 | 973,400 | 945,900 | 918,400 | 890,900 | 863,400 | 835,900 | 808,400 | 780,900 | |
| **Total Cash Collateral** | | 4,893,184 | 4,800,184 | 4,719,684 | 4,639,184 | 4,498,184 | 4,465,684 | 4,375,684 | 4,340,684 | 4,202,184 | 4,172,184 | 4,103,684 | 4,094,684 | 3,981,184 | |

| **Summary of CIT Loan Balance** | | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Beginning Balance | $ 2,744,948 | 2,744,948 | 2,744,948 | 2,744,948 | 2,744,948 | 2,744,948 | 2,744,948 | 2,744,948 | 2,744,948 | 2,744,948 | 2,744,948 | 2,744,948 | 2,744,948 | 2,744,948 | |
| Advances | | | | | | | | | | | | | | | |
| Payments | | | | | | | | | | | | | | | |
| Ending Balance | | 2,744,948 | 2,744,948 | 2,744,948 | 2,744,948 | 2,744,948 | 2,744,948 | 2,744,948 | 2,744,948 | 2,744,948 | 2,744,948 | 2,744,948 | 2,744,948 | 2,744,948 | |

| **Summary of CIT Equity Cushion** | | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Amount | | 2,148,236 | 2,055,236 | 1,974,736 | 1,894,236 | 1,753,236 | 1,720,736 | 1,630,736 | 1,595,736 | 1,457,236 | 1,427,236 | 1,358,736 | 1,349,736 | 1,236,236 | |
| % | | 78% | 75% | 72% | 69% | 64% | 63% | 59% | 58% | 53% | 52% | 49% | 49% | 45% | |

-> Accounts receivable as of the petition date is $5,000,379 which has been reduced by 25% to account for projected customer allowances from invoiced amounts.
-: Inventory as of the petition date is $1,636,000 which has been discounted by 35% to allow for quicker turn of the inventory on hand

EXHIBIT "2"

# W-C Designs
**Employee Payroll Summary from ADP**
As of September 9, 2009

| Name | Status | Per Pay Period | Per Working Day Rate | Salary Employees for Sept 1 - 9 | Hourly Employees 9/15 Pay Period for Aug 24 - Sept 9 | Hourly Employees 9/30 Pay Period for Sept 5 - Sept 9 | 401k Benefits | Total |
|---|---|---|---|---|---|---|---|---|
| Cunningham, Michelle | Salary | $ 1,733.34 | $ 115.56 | $ 1,040.00 | | | 624.00 | $ 1,664.00 |
| Garcia, Rafael R | Hourly | 1,494.44 | 108.00 | | 1,282.50 | 324.00 | 488.38 | 1,770.88 |
| Guijarro, Amy R | Salary | 1,233.29 | 82.22 | 739.97 | | | 444.00 | 1,183.97 |
| Hilby, Ching-Fen Chen | Salary | 2,100.00 | 140.00 | 1,260.00 | | | 756.00 | 2,016.00 |
| Long, Kansurath | Salary | 1,000.00 | 66.67 | 600.00 | | | 360.00 | 960.00 |
| Lopez, Juan L | Salary | 1,766.66 | 117.78 | 1,060.00 | | | 636.00 | 1,696.00 |
| Luz Del, Carmen Martin | Hourly | 1,400.00 | 128.00 | | 1,280.00 | 384.00 | 498.12 | 1,778.12 |
| McCloskey, Sherry D. | Salary | 4,000.00 | 266.67 | 2,400.00 | | | 1,440.00 | 3,840.00 |
| McCullagh, Patrick J | Salary | 15,600.00 | 1,040.00 | 9,360.00 | | | 5,616.00 | 14,976.00 |
| Nguyen Bui, Christine T. | Salary | 1,033.34 | 68.89 | 620.00 | | | 372.00 | 992.00 |
| Osborne, Mary Beth | Salary | 4,400.00 | 293.33 | 2,640.00 | | | 1,584.00 | 4,224.00 |
| Rausch, Steve | Salary | 4,133.34 | 275.56 | 2,480.00 | | | 1,488.00 | 3,968.00 |
| Rodriguez, Martha A | Salary | 1,000.00 | 66.67 | 600.00 | | | 360.00 | 960.00 |
| Ryan, Karen L | Salary | 2,100.00 | 140.00 | 1,260.00 | | | 756.00 | 2,016.00 |
| Spinos, Catherine S | Salary | 3,600.00 | 240.00 | 2,160.00 | | | 1,296.00 | 3,456.00 |
| Vargas, Israel D | Hourly | 1,133.34 | 108.00 | | 1,277.44 | 324.00 | 481.95 | 1,759.39 |
| Vargas, Mary Jane | Salary | 1,133.34 | 75.56 | 680.00 | | | 408.00 | 1,088.00 |
| Walker, Calvin | Salary | 1,266.66 | 84.44 | 760.00 | | | 456.00 | 1,216.00 |
| Wu, Yuenkei Anna | Hourly/PartTime | 1,320.00 | 128.00 | | 1,200.00 | 256.00 | 0.00 | 1,200.00 |
| | | | | $ 3,545.33 | $ 27,659.98 | $ 5,039.94 | $ 1,288.00 | $ 18,064.45 | $ 50,764.37 |

Exhibit 2, Page 9

NOTE: When using this form to indicate service of a proposed order, DO NOT list any person or entity in Category I. Proposed orders do not generate an NEF because only orders that have been entered are placed on the CM/ECF docket.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is: 660 Newport Center Drive., 4th Fl., Newport Beach, CA 92660.

A true and correct copy of the foregoing document described as **DECLARATION OF PATRICK J. MCCULLAGH IN SUPPORT OF THE FOLLOWING MOTIONS: 1. CASH COLLATERAL; 2. PAYROLL; 3. LIMIT NOTICE** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner indicated below:

I. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On September 10, 2009, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

- United States Trustee (SA)    ustpregion16.sa.ecf@usdoj.gov
- Marc J Winthrop    pj@winthropcouchot.com

☐ Service information continued on attached page

II. **SERVED BY U.S. MAIL OR OVERNIGHT MAIL**(indicate method for each person or entity served):
On September 10, 2009 I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☒ Service information continued on attached page

III. **SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on _____, I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| September 10, 2009 | Susan Connor | |
|---|---|---|
| Date | Type Name | Signature |

# ADDITIONAL SERVICE LIST

| | | |
|---|---|---|
| W/C Imports Inc.<br>Attn: Patrick J. McCullagh, Pres.<br>905 East Katella Ave.<br>Anaheim, CA 92805 | Office of the U.S. Trustee<br>411 W. Fourth St., #9041<br>Santa Ana, CA 92701-4593 | ***W/C Imports MML***<br>***Document No. 133392*** |
| Counsel to The CIT Group, Secured Creditor<br>Alexandra Rhim, Esq.<br>Scott Smith, Esq.<br>Buchalter Nemer<br>1000 Wilshire Blvd., Suite 1500<br>Los Angeles, CA 90017 | | |
| 3PL<br>Attn: Corporate Officer<br>2001 E. Dyer Rd.<br>Santa Ana, CA 92705 | Air Tiger Express Inc.<br>Attn: Corporate Officer<br>1975 Charles Willard St<br>Rancho Dominguez, CA 90220 | Allen Matkins Leck, et al.<br>Attn: Managing Partner<br>1900 Main St., Fifth Flr.<br>Irvine, CA 92614-7321 |
| C2 Media.Com<br>Attn: Alex Raeburn<br>P.O. Box 100992<br>Atlanta, GA 30384-0992 | Calvin Klein, Inc.<br>Attn: Corporate Officer<br>205 W. 39th St., 4th Flr.<br>New York, NY 10018 | **CIF Attn: Corporate Officer**<br>**Rm10-12,22/F Golden Busi Ctr**<br>**#2028 Shennan East Road Luohu**<br>**District Shenzhen China 518007** |
| Core Supply Company, LLC<br>Attn: Managing Member<br>170 Vander St., Unit G<br>Corona, CA 92880 | **Design-45 Exports PV**<br>**Attn: Corporate Officer**<br>**F-301 Lado Sarai, M.B. Road**<br>**New Delhi, India 110 030** | Federal Express Corp<br>Attn: Corporate Officer<br>P.O. Box 7221<br>Pasadena, CA 91109-7321 |
| Hep Direct<br>Attn: Corporate Officer<br>P.O. Box 7204<br>High Point, NC 27264 | **Hsin-Yin Pottery Atn Corp Ofcr**<br>**Zhong Dun Indus Area**<br>**Bai Zha Humen, Dongguan City**<br>**Guangdong, China** | K/L Anaheim Properties I LLC<br>c/o GS Mgmt/Attn: Managing Mbr<br>5674 Sonoma Drive<br>Pleasanton, CA 94566 |
| Manhattan Properties Co<br>Attn: Corporate Officer<br>295 Fifth Avenue<br>New York, NY 10016-7103 | Mayo Studios, Inc.<br>Attn: Corporate Officer<br>23-02 Forty Ninth Ave.<br>Long Island City, NY 11101 | New Image<br>Attn: Corporate Officer<br>917 East Katella Ave.<br>Anaheim, CA 92805 |
| Secured Creditor<br>Patrick J. McCullaugh<br>6 Gray Stone Way<br>Laguna Niguel, CA 92677 | Strategic Stfng Alliance Inc.<br>Attn: Corporate Officer<br>P.O. Box 809209<br>Chicago, IL 60680-9209 | Tabletops Unlimited<br>Attn: Dar Molayem<br>23000 Avalon Blvd.<br>Carson, CA 90745 |
| Secured Creditor<br>The CIT Group/Commercial Services<br>Attn: Corporate Officer<br>300 S. Grand Ave., 2nd Fl.<br>Los Angeles, CA 90071-3109 | Trivista Asia Group, LLC<br>Attn: Managing Member<br>31461 Rancho Viejo Rd., #202<br>San Juan Capistrano, CA 92675 | WWRD<br>Attn: Corporate Officer<br>1330 Campus Parkway<br>Wall, NJ 07719 |

| | |
|---|---|
| 1 | You Bang Crftwk/Uniq Wide Corp<br>Atn Corp Ofcr |
| 2 | Gucun Industry Area, Dajing,<br>Houjie Town, Dongguan City, |
| 3 | Gaungdong Province, China |
| 4 | |
| 5 | |
| 6 | |
| 7 | |
| 8 | |
| 9 | |
| 10 | |
| 11 | |
| 12 | |
| 13 | |
| 14 | |
| 15 | |
| 16 | |
| 17 | |
| 18 | |
| 19 | |
| 20 | |
| 21 | |
| 22 | |
| 23 | |
| 24 | |
| 25 | |
| 26 | |
| 27 | |
| 28 | |